## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BAINBRIDGE, LLC                                   CIVIL ACTION

VERSUS                                            NO. 22-3296

WESTERN WORLD                                     SECTION: "H"
INSURANCE COMPANY

### ORDER

Before the Court are Plaintiff Bainbridge LLC's Motion for Summary Judgment (Doc. 17) and Defendant Western World Insurance Company's Motion for Summary Judgment (Doc. 12). For the following reasons, Defendant's Motion is **GRANTED,** and Plaintiff's Motion is **DENIED.**

### BACKGROUND

This matter arises out of an insurance dispute between Plaintiff Bainbridge, LLC and its insurer, Defendant Western World Insurance Company, following damage to its commercial property caused by Hurricane Ida on August 29, 2021.[1] Plaintiff reported the damage to Defendant and Defendant's adjuster, John Roberts, visited the property on September 5, 2021. At the time of the inspection, Roberts requested copies of all leases applicable to the property. Plaintiff provided Roberts the leases on September 14, 2021. Roberts' submitted his first report to Defendant on September 14, 2021, but did not render an estimate until reviewing the leases. After reviewing the

---

[1] The insurance policy in question is a commercial policy bearing Policy No. NPP8641277 ("the Policy").

leases, Roberts sent Defendant the initial estimate on October 8, 2021, and his final report on October 9, 2021. Defendant confirmed the final estimate and issued a check to Plaintiff on October 12, 2021.[2] The check was mailed and postmarked to Plaintiff on October 14, 2021.[3]

Plaintiff sued in Louisiana state court alleging Defendant violated Louisiana Revised Statutes § 22:1892 by arbitrarily and capriciously failing to timely tender payment under the Policy. Defendant removed to this Court based on diversity jurisdiction. After complying fully with the requirements of the Hurricane Ida Case Management Order by participating in the Streamlined Settlement Program, this case was returned to the docket on March 28, 2023. Now before the Court are cross-motions for summary judgment.[4]

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[7]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[2] Doc. 17-3 at 11.
[3] *Id.* at 12.
[4] Docs. 12, 17.
[5] FED. R. CIV. P. 56(c) (2012).
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[10] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

## LAW AND ANALYSIS

Defendant moves for summary judgment on Plaintiff's claim for penalties and attorney's fees, arguing there is no material issue of fact that it tendered payment within 30 days of receiving satisfactory proof of loss. Contrastingly, Plaintiff argues it is undisputed that Defendant failed to tender payment within 30 days and thus Defendant is liable for bad faith insurance claims adjusting.

Louisiana Revised Statutes § 22:1892 provides that an insurer in Louisiana has a duty to pay a claim in a timely fashion and that when a failure to pay is found "to be arbitrary, capricious, or without probable cause" then the

---

[8] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[10] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[11] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

insurer may be liable for the resulting damages and for statutory penalties, attorney's fees, and costs.[13] To procure penalties and damages, an insured must demonstrate that "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within [thirty days] of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[14] The Louisiana Supreme Court has held that "arbitrary, capricious, or without probable cause" is synonymous with "vexatious."[15] An insurer is "vexatious" when its refusal to pay a claim is unjustified, without reasonable or probable cause or excuse.[16] "An insurer does not act arbitrarily and capriciously . . . when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage."[17] "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."[18]

"Ultimately, the determination of whether an insured acted in bad faith depends on the facts and circumstances of a particular case."[19] The Louisiana Supreme Court has stated that "[i]t is well settled that a 'satisfactory proof of loss' is only that which is 'sufficient to fully apprise the insurer of the insured's claims.'"[20] "Satisfactory proof of loss of must include 'the extent of damages,' and the plaintiff bears the 'burden of proving the insurer received satisfactory

---

[13] LA. REV. STAT. § 22:1892(B)(1).

[14] La. Bag. Co., Inc. v. Audubon Indem. Co., 999 So. 2d 1104, 1112–13 (La. 2008).

[15] Id. at 1114.

[16] Dickerson v. Lexington Ins. Co., 556 F.3d 290, 297 (5th Cir. 2009) (citing Reed v. State Farm Mut. Auto Ins. Co., 857 So. 2d 1012, 1021 (La. 2003)).

[17] Id. at 297–98.

[18] Reed, 857 So. 2d at 1021.

[19] Ill. Union Ins. Co. v. La. Health Serv. & Indem. Co., No. CV 16-6604, 2017 WL 2537013, at *10 (E.D. La. June 12, 2017).

[20] La. Bag Co., 999 So. 2d at 1119 (quoting McDill v. Utica Mut. Ins. Co., 475 So. 2d 1085, 1089 (La. 1985)).

proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause.'"[21]

Here, the facts are not in dispute:

- Roberts inspected the property on September 5, 2021[22]
- Roberts received the leases from Plaintiff on September 14, 2021[23]
- The check was issued on October 12, 2021[24]
- The check was postmarked on October 14, 2021[25]

Thus, the issues are whether Defendant received satisfactory proof of loss when Roberts initially inspected the property, and whether Plaintiff showed that any delay was arbitrary and capricious. Defendant alleges that the earliest it could have received satisfactory proof of loss was the day it received the leases on September 14, 2021, as it needed to review the leases in order to ascertain the extent of the damage covered by the Policy.[26] On the contrary, Plaintiff asserts that Defendant had satisfactory proof of loss on September 5, 2021, when Roberts inspected the property.[27] While it is true  that, "under Louisiana law an insurer can, at least in some cases, obtain satisfactory proof of loss as a result of its adjuster's inspection of the damaged property."[28] This, however, does not mean that an insurer *always* receives satisfactory proof of

---

[21] Korbel v. Lexington Ins. Co., 308 F. App'x 800, 803 (5th Cir. 2009).
[22] Doc. 12-4 (Roberts's affidavit stating that he "inspected the insured property on September 5, 2021); Plaintiff also states in their motion that Roberts inspected the property on September 5, 2021. Doc. 17-1 at 2.
[23] Doc. 12-4 (Roberts's affidavit stating that Plaintiff provided him the leases on September 14, 2021).
[24] Doc. 17-3 at 11.
[25] *Id.* at 12.
[26] Doc. 18 at 5.
[27] Plaintiff submits an affidavit stating that Roberts "personally inspected, documented, and obtained satisfactory proof of the damage to the [p]roperty" on September 5, 2021. Doc. 17-3. The Court notes that this affidavit does not, on its own, create an issue of material fact on when Defendant received satisfactory proof of loss. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (holding that a plaintiff "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'").
[28] *Korbel*, 308 F. App'x at 804.

5

loss as a result of its initial inspection of a damaged property. Whether satisfactory proof of loss has been received is a question of fact, and the insurer need not have any formal style of proof as long as it has the actual knowledge of the facts.[29]

Here, the property in question is commercial and was not determined to be a total loss. As a part of the inspection, Roberts requested additional documentation—copies of all applicable leases—to accurately ascertain damages.[30] Roberts provided that "when adjusting commercial property leased to others, [he] is not able to estimate damages until [he] review[s] any applicable leases" because "the leases will cover to what extent the landlord and tenant is responsible for repairs."[31] First, Plaintiff claims it did not fully understand why Roberts was requesting copies of the applicable leases, but fails to cite any law that would require an adjuster to fully explain the claim investigation process.[32]

Plaintiff also argues that nothing in the Policy would "exclude or limit[] coverage of damage to the exterior elevations or roof system of the Property, regardless of any provision of any tenant lease," and thus, the leases were not necessary to estimate damages.[33] The Court finds there are provisions of the Policy that may arguably exclude property covered by other insurance policies,

---

[29] *See* Boudreaux v. State Farm Mut. Auto. Ins. Co., 896 So. 2d 230, 236 (La. App. 4 Cir. 2005); Artigue v. La. Farm Bureau Mut. Ins. Co., 339 So. 2d 880 (La. App. 3 Cir. 1976); Wilkins v. Allstate Ins. Co., 173 So. 2d 199 (La. App. 1 Cir. 1965).

[30] The Court finds that the request for additional information is reasonable under the circumstances. Similarly, in *Paul v. National Am. Ins. Co.,* the Court held that the insurer received satisfactory proof of loss and was fully apprised of the claim when the adjuster toured the property and received a list of forms detailing the contents of the residence. Paul v. Nat. Am. Ins. Co. 361 So. 2d 1281, 1284 (La. App. 1 Cir. 1978).

[31] Doc. 12-4 at 2.

[32] Doc. 19 at 3 ("Although Mr. Roberts requested copies of leases with Bainbridge's tenants, at no point did Mr. Roberts indicate that payment of Bainbridge's claim was dependent on his or Western World's receipt of the leases, or that he needed the leases in order to determine which damages were the responsibility of Bainbridge's tenants").

[33] Doc. 22 at 2.

such as those possibly held by Plaintiff's tenants.[34] Courts have held that an insurer does not act arbitrarily or capriciously when there is a good faith dispute about the amount of loss or applicability of coverage.[35] The Court finds that, under these circumstances, the existence of leases applicable to the property created a good faith dispute regarding coverage.[36] Regardless of whether the leases did, in fact, affect the estimation of loss, it is reasonable for Defendant to seek out all information that could affect the coverage under the Policy. Since there was a reasonable, good faith dispute as to coverage, Defendant's request to see the leases before estimating the loss cannot, as a matter of law, be found to be arbitrary or capricious. The Court finds that, as a result, Defendant could not have received satisfactory proof of loss until it obtained the leases from Plaintiff.

Plaintiff did not send copies of the leases until September 14, 2021.[37] Defendant mailed the check on October 14, 2021, which constitutes payment for the purposes of § 22:1892.[38] Therefore, Defendant tendered payment within 30 days of receiving satisfactory proof of loss.[39] Regardless, Plaintiff's bad faith

---

[34] Doc. 12-2 at 51 (explaining that covered property does not include [p]property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance").

[35] *Dickerson*, 556 F.3d at 297 (citing *Reed*, 857 So. 2d at 1021).

[36] Doc. 12-4 ("When adjusting commercial property leased to others, I am not able to estimate damages until I review any applicable leases")

[37] Doc. 12-4. *See also Dickerson*, 556 F.3d at 299 ("[A]n insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrarily in delaying payment.").

[38] Where an insurer places "a check in the mail, with sufficient postage and properly addressed," this constitutes "payment" for the purposes of § 22:1892. Harris v. Imperial Fire & Cas. Ins. Co., 22, 1220 (La. App. 1 Cir. 2021); Schexnaildre v. State Farm Mut. Automobile Ins. Co., 184 So. 3d 108, 115 (La. App. 1 Cir. 2015).

[39] LA. C.C.P. art. 5059 provides that "[i]n computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday."

claims must be dismissed as there are no material issue of fact as to whether Defendant tendered payment within 30 days of receiving satisfactory proof of loss.[40]

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 13th day of July, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[40] While not necessary for the purposes of this claim, as payment was tendered within 30 days of September 14, 2022, the Court notes it is likely that Roberts needed several days to examine the leases and complete his adjustments, meaning that Defendant did not receive satisfactory proof of loss for several days following Roberts's receipt of the leases. *Korbel*, 308 F. App'x at 804 (noting that where the house was not a total loss, "the adjusters presumably needed time to complete their adjustments after inspecting the house").